IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KEVIN PHELPS, # K-78191, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-073-SMY |
| | ) |
| SALVADOR GODINEZ, | ) |
| STEVE DUNCAN, | ) |
| ASSISTANT WARDEN MOORE, | ) |
| ASSISTANT WARDEN TREDWAY, | ) |
| and JOHN DOES, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff, currently incarcerated at Lawrence Correctional Center ("Lawrence"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is a long-term inmate who is confined to a wheelchair and does not have use of his legs. He claims that he was subjected to a strip search and an invasive body cavity search that was sexually humiliating, and was then beaten by correctional officers and made to sit in his own waste. He asserts violations of his civil rights, as well as of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq.*, and/or the Rehabilitation Act ("RA"), 29 U.S.C. § 794.

In his complaint, Plaintiff states that at around 11:00 a.m. on July 7, 2014, his housing unit was searched by members of the Tactical Team. Defendant Officers John Doe #1 and John Doe #2 conducted the search. These Defendants did not wear name tags or badges, so Plaintiff was unable to identify them (Doc. 1, pp. 12-13). After Plaintiff was initially strip-searched, Defendant John Doe #1 made him get out of his wheelchair and told him, "Since you can't stand

up, you got to get back in bed and roll over so I can check your ass hole to make sure you ain't hiding anything up there since you say you can't walk or bend over to cough" (Doc. 1, p. 12). Plaintiff got on the bed expecting a pat-down. However, Defendant John Doe #1 "put his finger in [Plaintiff's] rear end." *Id*. Plaintiff protested, and Defendant John Doe #1 told him, "you probably can't feel it anyway," provoking laughter from Defendant John Doe #2, who had been observing the incident.

Plaintiff asked to speak to a lieutenant or a nurse. Defendant John Doe #1 responded by telling Plaintiff to shut the f*** up and get back in his wheelchair. When Plaintiff repeated his request, Defendant John Doe #1 told Defendant John Doe #2 to take Plaintiff to the shower and "beat his ass" (Doc. 1, p. 13). Defendant John Doe #2 hit Plaintiff twice in his side with a stick. He cuffed Plaintiff's hands behind his back and told him to be quiet or he would come back and "beat [his] black ass out of that wheelchair." *Id*. The Defendants then kept Plaintiff in the shower with his hands cuffed. His repeated requests to be allowed to go to the bathroom were refused. Plaintiff urinated on himself because he has no bladder control, and was made to sit in his own urine for about two hours.

Plaintiff states that Defendants Moore (assistant warden) and Duncan (warden) were present during this time, and allowed the John Doe officers to violate his rights without taking any action (Doc. 1, p. 13; Doc. 1-1). Defendant Treadway (assistant warden) was "aware of the situation" yet failed to do anything. Plaintiff sent grievances to all three of these Defendants. He wrote to Defendant Godinez (Director of the Illinois Department of Corrections) to complain, but received no response.

Along with his complaint, Plaintiff filed 58 pages of exhibits. Some are relevant to the above events. However, a majority of these pages contain logs, grievances, and correspondence

relating to Plaintiff's complaints over being denied access to a medically authorized daily shower to address his disability-related health needs (Docs. 1-2, 1-3, 1-4). Plaintiff's statement of claim makes no mention of any incidents of shower denials, but includes only the above factual summary of the July 7, 2014, search and assault.

Plaintiff asserts claims against all Defendants in both their individual and official capacities. He seeks compensatory and punitive damages.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** Eighth Amendment claim against Defendant John Doe #1 for subjecting Plaintiff to a humiliating and intrusive body cavity search during a strip search, and against Defendants John Doe #2, Duncan, and Moore, for observing the search and failing to intervene;
>
> **Count 2:** Eighth Amendment excessive force claim against Defendant John Doe #2 for hitting Plaintiff; against Defendant John Doe #1 for ordering the beating; and against Defendants Duncan and Moore, for observing the beating and failing to intervene;
>
> **Count 3:** Eighth Amendment claim against Defendants John Doe #1, John Doe #2, Duncan, and Moore, for denying Plaintiff access to the bathroom and leaving him to sit in his own urine;
>
> **Count 4:** Claims under the ADA and/or RA for unequal treatment and/or discrimination against Plaintiff on account of his disability, including an invasive body cavity search, excessive force, and denial of access to bathroom facilities;

  **Count 5:**  Potential claims against other Unidentified (John Doe) Defendants for denying Plaintiff access to a medically-authorized daily shower.

As shall be discussed below, the claims in Counts 1-4 each state a colorable federal cause of action against one or more Defendants, and shall be allowed to proceed for further review. However, Count 5 and some Defendants shall be dismissed from the action.

**<u>Count 1 – Body Cavity Search/Strip Search</u>**

Strip searches that are not related to legitimate security needs or are conducted in a harassing manner in order to humiliate and inflict psychological pain, may be found unconstitutional under the Eighth Amendment. Further, even if a valid penological reason existed for the search, "the manner in which the searches were conducted must itself pass constitutional muster." *Mays v. Springborn*, 719 F.3d 631, 634, (7th Cir. 2013) (group of inmates were strip searched together, gratuitously exposing prisoners' nude bodies to each other, while guards uttered demeaning comments) (quoting *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009)); *Mays v. Springborn*, 575 F.3d 643, 649-50 (7th Cir. 2009); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (a strip search conducted in a harassing manner intended to humiliate and inflict psychological pain could violate the Eighth Amendment).

In Plaintiff's case, the initial strip search appears to have been related to legitimate security needs in connection with a general search of his housing area. However, when Defendant John Doe #1 made Plaintiff lie on his bed naked and inserted his finger into Plaintiff's rectum, this action along with his comments indicate a potential violation of Plaintiff's constitutional rights. Furthermore, "an unwanted touching of a person's private parts, intended to humiliate the victim or gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant." *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012). Given these considerations, Plaintiff may proceed

with this Eighth Amendment claim against Defendant John Doe #1.

Because Plaintiff states that Defendant John Doe #2 participated in the strip search and did nothing to prevent the alleged violation of Plaintiff's constitutional rights, he is also included in the claim. *See Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972) (officer who observes a prisoner's abuse by a fellow officer yet fails to intervene may be equally liable, even if the observing officer is not a supervisor of the wrongdoer); *see also Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (collecting cases); *Archie v. City of Racine*, 826 F.2d 480, 491 (7th Cir. 1987). Defendants Duncan and Moore are also alleged to have been present, and failed to intervene. While it is not entirely clear from Plaintiff's description whether these two individuals observed the entire strip search and body cavity search; giving liberal construction to the pleading, it would be premature to dismiss them from Count 1 at this time.

However, Plaintiff does not claim that Defendants Tredway or Godinez were on the scene to observe the actions of Defendants John Doe #1 or John Doe #2. Plaintiff states only that Defendant Tredway was "aware" of the situation, and that Plaintiff filed a grievance with her to which she did not respond (Doc. 1, p. 13). Likewise, Plaintiff says that Defendant Godinez "is the overseer of all IDOC," and that he wrote a letter to Defendant Godinez about the incident, which again yielded no response. These comments indicate that Defendants Tredway and Godinez only learned about the alleged violations after the fact, when Plaintiff raised complaints. This is not sufficient to impose liability on a defendant in a civil rights claim.

In order to be held individually liable, "a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). The alleged

failure to respond to complaints, or mishandling of grievances, "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Additionally, a supervisor cannot be held liable for a subordinate employee's misconduct, because the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville*, 266 F.3d at 740.

Plaintiff's allegations suggest that Defendant Tredway and Defendant Godinez were not personally involved in the events giving rise to his claims. Thus, **Count 1** shall proceed only against Defendants John Doe #1, John Doe #2, Duncan, and Moore.

### Count 2 – Excessive Force

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Plaintiff may pursue this excessive force claim in **Count 2** against Defendant John Doe #2, who struck the blows, and against Defendant John Doe #1, who directed the action. As well,

he may proceed against Defendants Duncan and Moore, on the allegation that they observed this incident but failed to intervene. *See Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972). For the reasons discussed above in Count 1, this claim in Count 2 is dismissed against Defendants Tredway and Godinez.

**<u>Count 3 – Denial of Access to Bathroom</u>**

The Eighth Amendment's prohibition on cruel and unusual punishment extends to forbid the infliction of punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – or deprive inmates of the minimal civilized measure of life's necessities, may violate the Eighth Amendment. *Rhodes*, 452 U.S. at 346-47; s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992); *Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

In order to state an actionable claim, a plaintiff must show that he faced an objectively serious risk of harm, and that the defendant was deliberately indifferent to that risk. In other words, the prison official must have taken some action to place the inmate at risk, or failed to act to mitigate the conditions, despite the official's knowledge of a substantial risk of serious harm to the plaintiff. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837, 842 (1994); *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). Mere negligence, however, does not violate the Constitution. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

The lack of access to toilet facilities for a relatively short period of time may not be sufficiently serious to state a claim of constitutional dimension. *See, e.g., Clark v. Spey*, No. 01-C-9669, 2002 WL 31133198 at *2-3 (N.D. Ill. Sept. 26, 2002) (inmate held in cold cell with no toilet for several hours overnight failed to state a claim); *Ledbetter v. City of Topeka, Kansas*, 318 F.3d 1183, 1188 (10th Cir. 2003) (pretrial detainee held for five hours in cell lacking a toilet did not state claim for cruel and unusual punishment). However, denying bathroom access to an inmate who cannot control his bladder due to his disability, forcing him to urinate on himself, and then making him sit in his urine-soaked clothes for two hours, suggests an Eighth Amendment violation. *See Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012) (depending on severity, duration, nature of the risk, and susceptibility of the inmate, prison conditions may violate the Eighth Amendment if they caused either physical, psychological, or probabilistic harm).

Plaintiff says that he repeatedly asked the Defendants to allow him to use the bathroom, but was refused. At this stage, he has pled a deliberate indifference claim in **Count 3** against Defendants John Doe #1, John Doe #2, Duncan, and Moore, which shall proceed for further review.

## Count 4 – Americans with Disabilities Act and Rehabilitation Act

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability . . . be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA applies to prisons. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). The Court further held in *U.S. v. Georgia*, 546 U.S. 151 (2006), that an inmate may bring a private cause of action for damages pursuant to Title II of the ADA if the state actor's conduct also violates the

Eighth Amendment.

Plaintiff's physical limitations demonstrate that he is a qualified disabled person for ADA purposes. 42 U.S.C. § 12102(1). He has stated colorable Eighth Amendment claims in Counts 1-3 above. The facts of his case indicate that he may have been subjected to the invasive body cavity search, and possibly the use of excessive force, because of his disability. The refusal to permit Plaintiff to access the bathroom while he was being held in the shower clearly had a disparate impact on him because of his disability. As the Supreme Court observed:

> [I]t is quite plausible that the alleged deliberate refusal of prison officials to accommodate [Plaintiff]'s disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constituted "exclu[sion] from participation in or ... deni[al of] the benefits of" the prison's "services, programs, or activities."

*Georgia*, 546 U.S. at 158 (citing 42 U.S.C. § 12132). At the pleading stage, Plaintiff has stated a claim for damages under the ADA that merits further review.

To state a claim under the RA, a plaintiff must allege that (1) he is a qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his disability. *See* 29 U.S.C. § 705(2)(B); *Jaros v. Illinois Dept. of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Plaintiff has done so here, at least with regards to the denial of access to the bathroom. He may therefore proceed on both his ADA and RA claims. However, he should note that even if he prevails under both statutes, he can have only one recovery. *See Duran v. Town of Cicero, Ill.*, 653 F.3d 632, 639 (7th Cir.2011) (plaintiffs may have but one recovery).

Claims under Title II of the ADA must be brought against a governmental (*i.e.*, public) entity, 42 U.S.C. § 12132. Likewise, a claim under the RA must be brought against the state agency rather than an individual defendant. Therefore, the Court will allow Plaintiff's ADA and

RA claims in **Count 4** to proceed, but only against Defendant Godinez in his *official* capacity. No claim is stated against Defendant Godinez in his personal capacity under any count in this action.

### Dismissal of Count 5 – Denial of Access to Shower

The Court addresses this claim separately in order to clarify its dismissal from this action, without prejudice, for failure to state a claim upon which relief may be granted. In his list of Defendants, Plaintiff includes "Defendant # 7," described as "C/O John Doe's (7-3 shift) [and] (3-11 shift)" (Doc. 1, p. 5). However, he never mentions these collective Defendants anywhere in his statement of claim or elsewhere in the complaint. When a complaint merely lists a potential defendant but includes no factual allegations against the party, no claim is stated. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

A review of Plaintiff's numerous exhibits reveals that he kept records and filed several complaints about having been denied access to the shower by various correctional officers on the 7-3 and 3-11 shifts over a period of several weeks (Docs. 1-2, 1-3, 1-4). He had been given medical authorization for a daily shower because of his disability-related health needs.

While Plaintiff may have constitutional or statutory claims arising from the shower denials, he fails to effectively assert them in this case. The Court will not sift through multiple exhibits in order to craft a claim where Plaintiff has not included any allegations in his complaint relating to this matter. Moreover, any claim based on the shower denial appears to be factually and legally distinct from the claims in Counts 1-4; for this reason, it must be brought in a separate action. *See George v. Smith*, 507 F.3d 605 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits).

**Count 5** and the remaining John Doe Defendants shall thus be dismissed without prejudice. Further, the Clerk shall be directed to strike Doc. 1-2 from the record. This 22-page exhibit pertains only to the shower denials, and has nothing to do with any of the claims in Counts 1-4. In the future, Plaintiff is advised to include only relevant material as exhibits to his pleadings, and should refrain from submitting unnecessary documents.

**Pending Motion**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

**Disposition**

**COUNT 5** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Defendants **TREDWAY** and **JOHN DOES (7-3 shift & 3-11 shift)** are **DISMISSED** from this action without prejudice. The other two Unknown Defendants **(John Doe C/O #1 and John Doe C/O #2)** remain in the action.

**DEFENDANT GODINEZ** remains in this action in his official capacity only.

The Clerk of Court shall prepare for Defendants **GODINEZ, DUNCAN,** and **MOORE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the **Unknown Defendants (John Does #1 and #2)** until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Philip M. Frazier** for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties*

*consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: February 17, 2015**

                                            s/ STACI M. YANDLE
                                            United States District Judge