## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **KEVIN PHELPS, K78191,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:15-cv-00073-SMY-PMF** |
| | ) | |
| **SALVADOR GODINEZ,** | ) | |
| **STEVE DUNCAN,** | ) | |
| **ASSISTANT WARDEN MOORE,** | ) | |
| **ASSISTANT WARDEN TREDWAY,** | ) | |
| **And JOHN DOES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATIONS

**FRAZIER, Magistrate Judge:**

Presently before the Court is Plaintiff Kevin Phelps' "Motion for Preliminary Injunction and Temporary Restraining Order." Plaintiff Kevin Phelps is an inmate with the Illinois Department of Corrections ("IDOC") at Lawrence Correctional Center ("Lawrence") and the Defendants in this case are IDOC employees. Phelps proceeds on a four count complaint asserting that the Defendants violated his Eighth Amendment rights and violated the Americans with Disabilities Act and Rehabilitation Act.[1]

---

[1] Judge Yandle  conducted a Merits Review pursuant to 28 U.S.C. § 1915A and held that Phelps articulated the following four claims. Count 5 was dismissed.

**Count 1:**  Eighth Amendment claim against Defendant John Doe #1 for subjecting Plaintiff to a humiliating and intrusive body cavity search during a strip search, and against Defendants John Doe #2, Duncan, and Moore, for observing the search and failing to intervene;

**Count 2:**  Eighth Amendment excessive force claim against Defendant John Doe #2 for hitting Plaintiff; against Defendant John Doe #1 for ordering the beating; and against Defendants Duncan and Moore, for observing the beating and failing to intervene;

**Count 3:**  Eighth Amendment claim against Defendants John Doe #1, John Doe #2, Duncan, and Moore, for denying Plaintiff access to the bathroom and leaving him to sit in his own urine;

**Count 4:**  Claims under the ADA and/or RA for unequal treatment and/or discrimination against Plaintiff on account of  his disability, including an invasive body cavity search, excessive force, and denial of access to bathroom facilities (against Godinez in his official capacity);

**Count 5 (Dismissed):**  Potential claims against other Unidentified (John Doe) Defendants for denying Plaintiff access to a medically-authorized daily shower.

Phelps is paralyzed from the waist down uses a wheelchair for mobility. Because of his disability, Phelps was issued a permit from his doctor that allows him to use the shower facilities on a daily basis. In Phelps' motion for injunctive relief he asserts that correctional staff at Lawrence are violating his medical permit by denying him daily access to the shower facilities. Phelps now seeks an injunction that would require Lawrence staff to comply with the medical permit so that he would be allowed daily shower access. Phelps also requests a transfer to a different facility. Phelps states in his motion that he spoke to Warden Duncan and Counselor Henton regarding a prison transfer. Both individuals responded by telling Phelps that he would not be receiving a transfer if he kept filing grievances. Phelps' motion also requests that that various Lawrence staff members be subject to criminal prosecution because they threatened him.

On May 11, 2015 a hearing was held for Phelps' motion in front of Judge Frazier. The Plaintiff attended by video conference. The defense presented two witnesses; Correctional Officer Hundley and Health Care Unit Administrator ("HCUA") Phillip Martin. For the following reasons, it is RECOMMENDED that Phelps' motion be GRANTED in part and DENIED in part. It is recommended that Phelps be granted a preliminary injunction ordering Defendant Salvador Godinez, in his official capacity as director of the Illinois Department of Corrections, to provide him with daily access to shower facilities. Phelps' motion for preliminary injunctive relief should be denied in all other respects.

Phelps is a paraplegic and he suffers from urinary and bowel incontinence. Because of his disability, Phelps receives special privileges at Lawrence. HCUA Martin testified at the preliminary injunction hearing that these privileges include a wheel chair, a special ADA cell that allows for wheel chair access, an inmate-assistant who assists Phelps with various tasks, an air mattress and other privileges. Martin further testified that Phelps is provided with Depends

briefs and catheters for his incontinence. Phelps was also issued a medical permit from Dr. Coe that entitles Phelps to use the shower facilities on a daily basis. The permit states that Phelps is to be provided showers "in the evening if possible."  While the term "permit" implies some degree of discretion, HCUA Martin testified that a medical permit is essentially a mandate from the inmate's physician. In Phelps' situation, the permit mandates that he be allowed daily use of the shower facilities.

Phelps testified at the hearing and stated in his motion for preliminary injunctive relief that has been repeatedly denied daily shower access. Phelps states that he was denied a shower on May 8, 2015 by C/O Hickox, on April 19, 2015 by C/O Sanders, on April 8, 2015 by C/O Habling, and many other dates since Phelps' arrival at Lawrence on September 4, 2013. When Phelps is not allowed to use the shower facilities he is forced to sit and sleep in his own waste. This type of situation is not only extremely unpleasant, but it can also cause pressure ulcers or exacerbate existing ulcers.[2] Additionally, Phelps states in his motion that he cannot go to chow when he is sitting in his own waste. The record is not clear as to whether his failure to eat is a voluntary decision by Phelps' or an order from Lawrence staff. It is apparent that relations with staff and other inmates would be strained when Phelps is in such a condition. At the hearing, HCUA Martin was asked if there are any consequences for correctional officers who fail to comply with inmates' medical permits. HCUA Martin's response was not very forthcoming, but he indicated that he was unaware of any repercussions arising out of the failure to provide Phelps with his daily shower access.

Phelps' primary issue here is his shower access dispute, but Phelps also states that he is being harassed by correctional officers at Lawrence. Phelps states in his motion that he was

---

[2] National Institute of Health MedlinePlus, Preventing Pressure Ulcers,
http://www.nlm.nih.gov/medlineplus/ency/patientinstructions/000147.htm (last visited May 12, 2015).

threatened by C/O Hundley, C/O Sanders put water on his legal papers, C/O Tanner stated that "one day I'm going to be up in that gun tower and the gun is going to accidentally go off and hit you" and C/O Johnson said that "we should take you out back and put you down like a dog" At the hearing, C/O Hundley denied harassing Phelps. HCUA Martin also testified that Phelps was recently issued a disciplinary ticket for cursing at him and the health care unit staff.

Following the motion hearing, the Defendants filed a supplemental response in opposition (Doc. 28) to Phelps' motion for preliminary injunction along with an affidavit from HCUA Martin (Doc. 31). Martin states in his affidavit that the Lawrence staff members are working with Phelps to ensure that he is given appropriate medical treatment and that Phelps was issued a new medical permit from Dr. Coe. The new medical permit states: "Daily shower in morning after count clears, then bring to HCU for dressing change. Offer supplement at this time." The medical permit is to last indefinitely. Martin's affidavit also states that Phelps often refuses medical treatment when offered. On May 14, 2015 Phelps was offered but refused a dressing change and supplements. Additionally, Phelps was offered but refused to accept a new wheelchair. According to Martin, Phelps' old wheelchair had become a safety and security problem.

Phelps now seeks a preliminary injunction. Phelps' motion requests that he receive an injunction mandating daily shower access, a prison transfer and that various correctional staff at Lawrence be subject to criminal prosecution. To obtain a preliminary injunction, Phelps must establish "a reasonable likelihood of success on the merits, no adequate remedy at law, and irreparable harm absent the injunction*." Planned Parenthood of Indiana, Inc. v. Comm'r of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). If Phelps can make this threshold showing, the District Court then "weighs the balance of harm to the parties if the injunction is

granted or denied and also evaluates the effect of an injunction on the public interest." *Id.*    The Prison Litigation Reform Act further requires that preliminary injunctive relief with respect to prison conditions be narrowly drawn, extend no further than necessary to correct the harm and be the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2).

The first issue that must be addressed is whether Phelps' request for daily shower access is a proper subject for a preliminary injunction in this case. "A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally" but a preliminary injunction is improper if "it deals with a matter lying wholly outside the issues in the suit." *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945). In the present case, Phelps' denial of access to the shower claim (Count 5) was dismissed at the merits review stage of this litigation and Phelps' primary request in his motion for preliminary injunctive relief is that he be provided with daily access to the shower facilities. While this would seemingly place Phelps' request for preliminary injunctive relief outside the scope of his claims, Phelps also proceeds on an Americans with Disabilities act / Rehabilitation Act claim (Count 4). Here, Phelps seeks daily shower access because of his disability. Phelps' request for preliminary injunctive relief is therefore of the same general character as his ADA / RA claim, and he should be allowed to pursue preliminary injunctive relief regarding shower access.

Because the daily shower access issue is a proper subject for injunctive relief, the Court will turn to the preliminary injunction analysis. To obtain a preliminary injunction, Phelps must first establish a reasonable likelihood of success on the merits, no adequate remedy at law, and irreparable harm absent the injunction. For Phelps to state a claim under the Rehabilitation Act,[3]

---

[3] Although Phelps asserts violations of both the Americans with Disabilities Act and the Rehabilitation Act, the relief available under these statutes is "coextensive." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012). Moreover, the legal analysis for an RA claim is essentially the same as that of an ADA claim. *Id.* Because

he must allege that "(1) he is a qualified person (2) with a disability and (3) the Department of Corrections denied him access to a program or activity because of his disability." *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012). Moreover, "[r]efusing to make reasonable accommodations is tantamount to denying access." *Id.*

In the present case, Phelps' paraplegia is a disability, *see* 42 U.S.C. § 12102, use of the prison washroom facilities is considered a "program or activity," *Jaros*, 684 F.3d at 672, and as an IDOC prisoner, he is qualified to use such facilities. Because Phelps' disability limits his control over his bladder and bowel functions, he has unique shower and toilet needs beyond that of a non-disabled prisoner. These needs were recognized when Dr. Coe issued Phelps his medical permits. Therefore, failure to comply with Phelps' medical permits, or denying him access to the washroom facilities can constitute the refusal to make reasonable accommodations. The standard for "reasonable accommodations" in a prison setting is a hazy one, taking into consideration institutional concerns such as safety, security and administrative needs, *see Love v. Westville Corr. Ctr.*, 103 F.3d 558, 561 (7th Cir. 1996), but at this point in the litigation Phelps has established a reasonable likelihood of success for his RA claim.

Phelps must next establish that there is no adequate remedy at law and that he would suffer irreparable harm absent an injunction. This is essentially a question of whether Phelps "will be made whole if he prevails on the merits and is awarded damages." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Phelps seeks an injunction that would mandate compliance with his daily shower access permit. When the Defendants fail to provide Phelps with daily shower access he is forced to sit in his own waste for hours at a time. Not only does Phelps have to suffer the indignity and extreme discomfort of sitting in his own waste, but

---

Phelps would be unable to obtain double recovery under both the RA and ADA, the Court will only address the RA issue. *See id.*

he is also subject to ridicule from other inmates and an increased risk of further health complications. Moreover, these events occur in a prison setting where Phelps has little control over his medical treatment and day to day activities. When viewed in the entirety, monetary damages would not provide much relief in such a situation nor would it make Phelps "whole." Phelps has therefore met the threshold burden required to obtain a preliminary injunction.

After determining that the Plaintiff has met the threshold burden, the Court must now "exercise its discretion to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). Here, the Plaintiff's injunction would require that IDOC comply with his medical permit so that he may receive daily access to the prison shower facilities. HCUA Martin stated at the hearing that the medical permits are essentially doctor's orders. Thus the injunction would only require that IDOC perform a task that they should already be performing. Any harm to the Defendants would therefore be minimal at most and any harm to the public interest would be negligible. With such little, if any harm to the Defendants, the factors weigh in favor of granting the Plaintiff's an injunction.

Such an injunction would also comply with the restrictions imposed by the Prison Litigation Reform Act. 18 U.S.C. § 3626(a)(2). This injunction would only require that the IDOC comply with an existing medical permit for a single prisoner. The injunction would require nothing else. Such an injunction is narrowly drawn, it extends no further than necessary to correct the harm and is the least intrusive means necessary to correct the harm. Plaintiff Phelps' Motion for Preliminary Injunction should therefore be granted in part.

The injunction should order Defendant Godinez in his official capacity to comply with Plaintiff Phelps' medical permit so that Phelps is allowed daily access to the Lawrence shower facilities. In the event of an emergency the Defendant should not be obligated to comply with the daily shower access. However in such an occurrence, Phelps should be provided shower access as soon as practicable. Pursuant to 18 U.S.C. § 3626, preliminary injunctive relief with respect to prison conditions automatically expires after 90 days. Sometime before the 90 day period lapses, the Court can determine whether to renew or extend the preliminary injunction. This injunction would be directed at Defendant Godinez because he is the only Defendant included in his official capacity. Warden Duncan is already a Defendant in this case in his individual capacity, but if he would also like to consent to being named a Defendant in his official capacity for the purpose of injunctive relief he may consent to do so within the objection period for this Report and Recommendations.

In addition to the daily shower access issue, Phelps also requests that he be transferred to a different prison and that the Defendants be subject to criminal prosecution. However with the Defendants' increased attention to the Plaintiff's health status, a prison transfer is unwarranted. Additionally, initiating a criminal prosecution is outside the Court's authority. Preliminary injunctive relief should be limited to the shower access issue.

**SO RECOMMENDED.**

**DATED:   May 19, 2014   .**

                                                     **s/Philip M. Frazier**
                                                     **PHILIP M. FRAZIER**
                                                     **UNITED STATES MAGISTRATE JUDGE**