# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

KEVIN PHELPS, K78191,
      *Plaintiff,*

          v.

SALVADOR GODINEZ, et al.,
      *Defendants*.

Case Number:  3:15-cv-00073-SMY-PMF

## REPORT AND RECOMMENDATIONS

**FRAZIER, Magistrate Judge:**

Before the Court are two motions. First, defendants Duncan, Godinez and Moore filed a motion for summary judgment.[1] (Doc. 49). The defendants assert in their motion that the plaintiff failed to exhaust administrative remedies prior to filing suit. Second, the plaintiff filed a "Motion for Preliminary Injunction, Temporary Restraining Order and [Subpoenas]." (Doc. 62). For the following reasons, it is recommended that the defendants' motion be granted and the plaintiff's motion be denied.

Plaintiff Kevin Phelps is an inmate with the Illinois Department of Corrections ("IDOC") and the defendants are IDOC employees. Phelps is currently at Lawrence Correctional Center ("Lawrence") and the incidents that give rise to this litigation occurred at that facility. Phelps is a paraplegic and he uses a wheelchair for mobility. (Doc. 1, p. 12). On July 7, 2014 the "Orange Crush" IDOC tactical team conducted a shakedown of Phelps' cell house. *Id.* Phelps asserts that when the defendants inspected his cell, they subjected him to an invasive and humiliating body

---

[1] Defendant McCarty was not included in the original motion (he filed an answer after the motion was filed) but he was granted an extension of time to file a motion for summary judgment. (See Doc. 69).

cavity search. *Id.* Phelps also states that the defendants subjected him to excessive force and violated his rights under the Americans with Disabilities Act. *Id.*

Phelps first filed a grievance concerning the July 7, 2014 shakedown on July 17, 2014. (Doc. 1-4, p. 11). Phelps' counselor responded to the grievance on September 3, 2014. *Id.* Phelps did not appeal the grievance any further. *Id.*

While waiting for his counselor to file a response to the first grievance, Phelps filed a second grievance concerning the shakedown on July 30, 2014. (Doc. 1-4, p. 13). Phelps submitted this second grievance as an "emergency grievance." *Id.* The Lawrence Warden denied the grievance as an emergency on August 4, 2014 and directed Phelps to resubmit the grievance through the normal non-emergency process. *Id.* Phelps did so, and submitted the grievance to his counselor on August 11, 2014. *Id.* Phelps' counselor then responded to the grievance on August 18, 2014. *Id.* On August 28, 2014 Phelps submitted the grievance to the Lawrence grievance officer. (Doc. 1-3, p. 10). The grievance officer and Lawrence Warden denied the grievance on December 31, 2014. *Id.*

While the grievance was under review at the Lawrence grievance office, Phelps submitted a copy of the grievance to the IDOC Administrative Review Board on October 31, 2014. (Doc. 1-4, p. 10). The ARB denied the grievance on November 18, 2014 because Phelps did not include the grievance officer's response. *Id.* As previously noted, the grievance officer and Warden would not provide a response until December 31, 2014.

Phelps then filed suit on January 23, 2015. (Doc. 1). Defendants Duncan, Godinez and Moore now seek summary judgment on the basis that Phelps failed to exhaust administrative remedies before filing suit. On March 28, 2016 a *Pavey* evidentiary hearing was held on that

issue with the plaintiff in attendance via videoconference. See *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

Pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e *et seq*, inmates bringing an action in federal court with respect to prison conditions must first exhaust all available administrative remedies before filing suit. *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). The Seventh Circuit has taken a strict compliance approach to exhaustion. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). IDOC regulations set forth emergency and non-emergency grievance procedures. Each will be addressed in turn.

For non-emergency grievances the IDOC implements a three step process. At step one, the prisoner must first attempt to resolve the dispute through his or her grievance counselor. See 20 Ill.Admin.Code § 504.810. At step two, if the prisoner is unable to resolve the dispute through his or her counselor, the prisoner may file a written grievance with the prison Grievance Officer within sixty (60) days of discovery of the dispute. *Id*. The Grievance Officer then considers the grievance and reports his or her findings and recommendations in writing to the warden. See 20 Ill.Admin.Code § 504.830.

The third and final step of the exhaustion process is an appeal to the ARB. After receiving a response from the warden at step two, the prisoner has thirty (30) days from the date of the response to appeal to the ARB. 20 Ill.Admin.Code § 504.850. The Director of IDOC and the ARB are required to make a "final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances." *Id*. Administrative remedies may usually be deemed fully exhausted after the prisoner receives a copy of the ARB's decision at step three.

The IDOC administrative remedies process is slightly different for emergency grievances. IDOC regulations state that "[a]n offender may request a grievance be handled on an emergency basis by forwarding the grievance directly to the Chief Administrative Officer [the prison warden]." 20 Ill. Admin.Code § 504.840. The warden may then either treat the grievance as an emergency or decline to treat it as such and return the grievance to the prisoner. *Id.* If the warden declines to treat the grievance as an emergency the prisoner may appeal the warden's denial directly to the ARB. *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005). This appeal will complete the exhaustion process. *Id.*, see also *Glick v. Walker*, 385 F. App'x 579, 583 (7th Cir. 2010) ("In *Thornton* … we explained that an inmate who seeks emergency review under § 504.840 has no obligation to resubmit the grievance through normal channels, even if the warden concluded that expedited review was unnecessary").

Here, Phelps did not properly exhaust his July 17, 2014 grievance or his July 30, 2014 grievance. Phelps pursued the July 17, 2014 grievance through the normal non-emergency procedures. However Phelps only went so far as to submit it to his counselor. Phelps did not appeal the grievance to the institutional level. Therefore, the grievance was not properly exhausted.

The circumstances surrounding the July 30, 2014 grievance are more complicated. Phelps initially filed it as an emergency grievance. After the Lawrence Warden denied the grievance as a non-emergency, Phelps could have exhausted the grievance in one of two ways. Phelps could have directly appealed the Warden's denial to the ARB (the method described in *Thornton*, 428 F.3d 690) or Phelps could resubmit the grievance through the normal non-emergency channels. Phelps chose the latter method. After the Warden's denial, Phelps gave the grievance to his counselor. Phelps received a response from his counselor and then submitted the grievance to the

Lawrence grievance office. But, Phelps then submitted the grievance to the ARB on October 31, 2014, before the Lawrence grievance office responded to it. The Lawrence grievance officer responded to his grievance on December 31, 2014. He therefore skipped a step, and did not properly exhaust administrative remedies. For this reason, the defendants' motion for summary judgment should be granted. It is not clear from the record whether Phelps ever resubmitted the grievance to the ARB after the Lawrence grievance office's December 31, 2014 decision. Phelps' testimony at the *Pavey* hearing supports this timeline of events.

In addition to the defendants' motion for summary judgment, Phelps filed a motion "Motion for Preliminary Injunction, Temporary Restraining Order and [Subpoenas]." (Doc. 62). Phelps' motion concerns serious medical issues that have developed in late 2015 and early 2016. Phelps states in his motion that his ulcers have gotten worse and that he was admitted to Carle Hospital in Urbana for 15 days. However, these medical issues are outside the scope of the underlying claims in this lawsuit. If Phelps would like to pursue an Eighth Amendment deliberate indifference to serious medical needs claim, he must do so in a separate lawsuit. Phelps is also reminded that he must properly exhaust administrative remedies before filing suit. It is therefore recommended that Phelps' motion be denied.

## RECOMMENDATIONS

It is recommended that the defendants' motion for summary judgment be granted and the plaintiff's motion be denied.

SO RECOMMENDED.

**Dated: March 30, 2016**

*s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE